GRISWOLD *vs.* SHELDON and PAYNE.

By the terms of a chattel mortgage upon a country store of goods, the mortgagor was entitled to retain possession until default in payment. A portion of the debt was payable in goods out of the store as the mortgagee might call for them. It also appeared, on the face of the mortgage, that the mortgagor had hired from the mortgagee the store in which the goods were kept for three years, and the mortgagor in the same instrument agreed to keep on hand a full assortment of goods, groceries, &c. It appeared in evidence that the mortgagor and mortgagee were respectively country merchants in the same village; that the latter sold to the former his stock of goods, and took the mortgage for the purchase money on all the goods in both establishments; that on the purchase being made, the mortgagor removed the stock of goods which he had previously owned, to the store which

Griswold *v.* Sheldon.

the mortgagee had occupied, having hired it for three years as before mentioned, and went on doing business there with the united stock of goods.

*Per* BRONSON, RUGGLES, JEWETT and McCOUN, Js.   The mortgage, besides [582] permitting by its terms the mortgagor to retain possession of the goods, on its face conferred on him the power to sell and dispose of them as his own, and was therefore fraudulent and void *in law* as to creditors ; and in an action brought by the mortgagee against a creditor who had levied on the goods, the court should have nonsuited the plaintiff on the trial.   *Contra, per* MULLETT, GARDINER, GRAY and PAIGE, Js.

The case of *Smith and Hoe* v. *Acker,* (23 *Wend.* 658,) and other cases upon the question of fraud where the possession of goods is left in the mortgagor or vendor, referred to and commented upon.   *Per* BRONSON, Ch. J. and MULLETT, J.

Where goods are left in possession of the mortgagor the statute declares. the presumption of fraud, and the courts should enforce that presumption.   Where there is *no evidence* of good faith the question is one of law.   *Per* MULLETT, J.

But where there is any material and pertinent evidence of good faith, the question is one of fact, and should be submitted to the jury.   *Per* MULLETT, J.

Upon a question of fraud in a mortgage or sale of goods, where the possession is left in the mortgagor or vendor, the proper instruction to a jury, it seems, is, that the mortgage or sale is presumed in law to be fraudulent and void, and that the party claiming under the transfer must disprove the fraud.

Whether a mortgage upon a stock of goods written in a book lettered " Day Book," containing an inventory of the goods, and store accounts, and deposited in a desk in the clerk's office where personal mortgages are kept, in pigeon holes, is *properly filed, quere.*

*Per* BRONSON, Ch. J.   The statute of 1847, (*p.* 328, § 30,) conferring original jurisdiction of actions upon county courts, is unconstitutional and void.

TROVER in the supreme court, brought by Griswold against Sheldon and Payne, for a quantity of dry goods, groceries, &c. The plaintiff and one Burdick were respectively country merchants, at Whitehall.   On the 31st of May, 1847, Burdick hired the plaintiff's store for three years, and purchased the plaintiff's stock of goods then in the store, for the sum of about $3000, to secure which he gave back a chattel mortgage on the same goods and on his own stock of goods.   The mortgage was written in an account book containing an inventory of all the goods covered by it, and containing also sundry accounts, debtor and credit, against different individuals.   The book was lettered " day book," and was filed in the proper town clerk's office on the 28th of June, 1847, where it was kept in a desk.   Chattel mortgages were kept in pigeon holes in the same desk.   The plaintiff claimed the goods in question under this mortgage.

The stock of goods which Burdick possessed before he pur-
[583] chased of the plaintiff, were moved by him from the store
which he had occupied to the one hired of the plaintiff, and
there mingled with the goods so purchased. Afterwards, on
the 7th of July, 1847, the defendant Sheldon recovered, by
confession in the county court of Washington county, a judg-
ment against Burdick for $5000 of debt, and $25,12 damages
and costs. On the 14th of August, 1847, an execution on the
judgment was issued and delivered to one of the deputies of
the defendant Payne, then sheriff of the county of Washington,
with directions to collect $2500 of debt and $25,00 damages and
costs. On the same day the deputy levied the execution upon
all the goods in the store. He also locked the store and kept
the goods in his possession until the 20th of August, 1847, on
which day he received another execution in favor of Sheldon
against Burdick, on a judgment recovered in the supreme court
on the 19th day of July, 1847, for $6000 of debt and $38,75
damages and costs. On receiving the execution last mentioned
the deputy levied it on the same goods by the direction of Shel-
don, who indemnified him, and sold the goods so levied on
making therefrom the sum of $660,95.

Upon the trial at the Washington county circuit, before Jus-
tice HAND, in June, 1848, it was insisted on the part of the
plaintiff, that the judgment first mentioned, rendered in the
county court, was void, as being for an amount beyond the ju-
risdiction which that court possessed under the judiciary act of
1847. The judge so decided, but he also held that if the exe-
cution was issued on such judgment, and the levy made with-
out the knowledge or consent of the defendants, they were not
liable for that levy.

It was insisted by the defendants on the trial, that the mort-
gage under which the plaintiff claimed was fraudulent as to
creditors. The terms of the mortgage, and the extrinsic facts
bearing upon the question of fraud, are stated in the opinion of
Chief Justice BRONSON.

When the evidence was closed the defendants moved for a
nonsuit, on the ground that the plaintiff's mortgage was not

Griswold *v.* Sheldon.

filed in the town clerk's office pursuant to the statute; also on the ground that the mortgage was void on its face, that [584] the plaintiff had no possession of the goods, or right of possession, under the mortgage, and that the necessary tendency and effect of the instrument was to hinder and delay creditors. The defendants also insisted that the plaintiff had no possession or right of possession at the time the property was levied on, and therefore that he could not recover without a demand from both defendants after his right accrued, of which there was no proof. The judge held that the mortgage was properly filed; that it was not void on its face; and that the jury must pass upon the question whether it was made to hinder, delay or defraud the creditors; and if they found it was not, then that they must find whether sufficient reason or excuse had been given for permitting Burdick to have possession of the goods. The motion for a nonsuit was denied, and the jury found a verdict for the plaintiff. The supreme court in the fourth district refused a new trial, and the defendants appealed from the judgment to this court.

*S. Stevens,* for appellants. The circuit court erred in refusing to nonsuit the plaintiff at the trial. The chattel mortgage introduced in evidence by plaintiff, and under which he claims, was not filed in the town clerk's office pursuant to the statute. (2 *R. S.* 71, § 9 *and* 10, 2d ed. ; *Laws of* 1833, *p.* 402 ; *Camp* v. *Camp,* 2 *Hill,* 628.)

The necessary tendency and effect of this mortgage was to hinder and delay creditors, and it is therefore void in law on its face. It was contemplated and intended by the mortgagor and mortgagee, that the chattels mortgaged should be exposed for sale and disposed of by the mortgagor, and that the mortgagor should treat the property as his own, and when sold the avails were his own. This appears upon the face of the instrument. (*Wood et al.* v. *Lowry et al.* 17 *Wend.* 492 ; *Divver* v. *McLaughlin,* 2 *id.* 596 ; *Jordan* v. *Turner,* 3 *Blackf.* 309 ; *Murray* v. *Riggs,* 15 *John.* 571—588 ; *Harris* v. *Sumner,* 2 *Pick.* 129.) Parties are presumed to intend the necessary effect of their acts.

There was no possession or right of possession in the plaintiff, [585] the mortgagee, when the property was taken by the sheriff, and no demand made since plaintiff's right (if any) accrued (*Buck* v *Lyon,* 9 *Cowen,* 52 ; *Hotchkiss* v. *Mc Vickar,* 12 *John.* 403 ; *Randall* v. *Cook,* 17 *Wend.* 53 ; *Bank of Rochester* v. *Jones,* 4 *Denio,* 489.) There must be a demand of both defendants, and there is no proof that any demand was ever made of defendant Sheldon. (*Mitchell* v. *Williams & Roberts,* 4 *Hill,* 13.)

〔 The judge erred in his charge to the jury. It is clear from the proof, about which there is no dispute, that the only excuse or reason for the property being left in the possession of the mortgagor, was to enable him to sell it as his own, and that the proceeds, when sold, would be the property of the mortgagor. Whether this was a sufficient excuse or reason for leaving the property in the possession of the mortgagor, was a question of law, and should have been held by the court to be no legal excuse or reason for the continuance of the possession in the mortgagor. Such reason, instead of rebutting the presumptive evidence of fraud, declared by the statute, increased such presumption. (*Hanford* v. *Archer,* 4 *Hill,* 294.) 〕

*A. Taber,* for respondent.

BRONSON, Ch. J. The county court judgment is void for the reason assigned at the circuit, that it is for an amount exceeding the jurisdiction of the court as prescribed by the judiciary act of May, 1847. (*Stat. of* 1847, *p.* 328, § 30.) And I think it open to the further objection that the statute conferring original jurisdiction on the county court in common law actions is unconstitutional and void. (*Const. art.* 6, § 14 ; *art.* 14, § 58.) Although two of the learned judges in one branch of the supreme court, whose opinions are entitled to the highest respect, have arrived at a different conclusion, (*Beecher* v. *Allen,* 5 *Barb.* 169,) I must say that, after carefully considering the question, I have never been able to entertain a doubt that the statute is in conflict with the constitution, and can not stand. But as it is not now necessary to discuss the question—the judgment being

Griswold v. Sheldon.

also void on another ground—I shall do no more than [586] declare my opinion, without assigning the reasons on which it is founded. I need hardly say that the question will remain open for consideration, should it ever be brought before this court.

Although the county court judgment was void, the judge ruled that if the execution was issued and the levy made without the knowledge or consent of the defendants, they were not liable : and there was not a particle of evidence that the defendant Sheldon knew any thing about either the judgment, the execution, or the levy; nor was there any proof that Payne, the sheriff, knew any thing about the matter, save what may be inferred from the fact that one of his deputies made the levy. It may be added that at the time of the first levy, the mortgage had not been forfeited, and the plaintiff had no right to the possession of the property. Burdick had paid all of the debt which had previously become due; and it was expressly provided by the mortgage that until default in payment he should retain the possession and enjoyment of the property. As there had been no default, and Burdick was in possession, the right of action for the illegal levy—whoever should be made defendant—was in him, and not in the plaintiff.

Six days after the levy under the void judgment a new levy was made under a valid judgment and execution against Burdick. This brings us to the consideration of the grounds on which the case was put at the circuit; and the general question is, whether the plaintiff can hold the goods by virtue of the mortgage against a judgment and execution creditor of the mortgagor.

The case was shortly this. The plaintiff and Burdick were respectively country merchants at Whitehall. On the 31st of May, 1847, Burdick hired the plaintiff's store for the term of three years, and purchased the plaintiff's stock of goods, then in the store, for the sum of about three thousand dollars. To secure the payment of the price he mortgaged those goods and all his own stock of goods to the plaintiff. The debt was to be paid by installments, the last of which was to fall due on the

Griswold v. Sheldon.

first of April, 1848; and until default in some of the payments, [587] Burdick was to remain and continue in the quiet possession and full enjoyment of the property. Burdick removed his former stock of goods to the store he had rented, and mingled them with the goods purchased of the plaintiff; and then went on with his business as a merchant in the usual way, selling the goods to his customers down to the time of the levy in August, 1847. It appears on the face of the mortgage that Burdick hired the "store" in which the goods were placed, for the purpose of using it as a store : that he was to pay one thousand dollars of the plaintiff's debt "in goods and groceries &c. from the store" "at the current prices," to be delivered at such times and in such quantities as the plaintiff might desire : and he agreed " to keep a good and full assortment of goods, groceries, &c. during the time he remains in said store, and until" the plaintiff's debt should be fully paid. It is apparent from the face of the instrument, when read with reference to the nature of the case, and the existing state of things at the time it was given, that the parties intended Burdick should do just what he did do : that he should go on selling the goods as a merchant, and dealing with them in all respects as though he were the absolute owner. Thus he acted down to the time of the first levy, when there had been no default on his part; and he was by the terms of the mortgage entitled to the possession of the goods to the exclusion of the plaintiff. On this case the judge refused to nonsuit the plaintiff, holding that the mortgage was not void in law against the creditors of Burdick; and left it to the jury to say, whether the mortgage was made to hinder, delay or defraud the creditors of Burdick, and whether a sufficient reason or excuse had been given for permitting Burdick to have possession of the goods.

I am far from thinking this a proper disposition of the cause. The parties not only stipulated for continued possession in the mortgagor, a thing which the legislature has condemned as presumptively fraudulent against creditors; (2 R. S. 136, § 5;) but I have been unable to read the conveyance, with a knowledge of the surrounding circumstances, without coming to the

Griswold *v.* Sheldon.

conclusion that, the parties intended Burdick should deal with the goods as his own. (When a merchant hires a store, [588] and buys a stock of goods to put in it; and when he moreover agrees to keep a good and full assortment of goods in the store, and to pay a debt in goods out of the store at the current prices, one must wink very hard not to see that he intended to deal with the goods as a merchant, and sell them to his customers; and of course the other party to the contract knew what was meant as well as he did. If this is a just view of the transaction—if it is apparent from the face of the deed that the plaintiff intended Burdick should not only have possession, but should be allowed to deal with the property as though he were the owner, no one will pretend that the mortgage can stand as against creditors and purchasers. )

But if the intention to allow Burdick to dispose of the mortgaged property as owner can not be gathered from the face of the deed, still the goods were left in his possession, and he was in fact allowed to deal with them as owner, and disposed of them as a merchant to his customers, from the date of the conveyance down to the time of the levy. Such a transaction the law always has, and I trust always will, pronounce a fraud upon creditors and purchasers; and the judge should have so ruled at the circuit. In *Worrall* v. *Smith,* (1 *Camp.* 332,) the debtor had made an assignment of his household furniture and stock in trade as a publican; and although a servant of the assignee was immediately put into the house, yet as the debtor was still allowed to carry on the business as usual, Lord Ellenborough held the assignment fraudulent and void as against creditors; and a creditor recovered against the sheriff in an action for falsely returning *nulla bona* to an execution against the assignor. In *Paget* v. *Perchard,* (1 *Esp.* 205,) Mrs. Spencer, who kept a public house, made a bill of sale of her liquors and furniture to the plaintiffs on the fourth of April, and the plaintiffs put a person in possession under the bill of sale the same evening. The property was taken the next day under an execution, and the plaintiffs brought trespass. But, it appearing that the agent whom the plaintiffs had put in possession had permitted

[589] Mrs. Spencer to sell liquors, in the usual way of her trade on the evening of the fourth of April, and to receive the money, Lord Kenyon held the bill of sale a fraud upon creditors, and nonsuited the plaintiffs. These are much stronger cases than the one at bar; for here the plaintiff, without taking even colorable possession—indeed, without having any right to possession—allowed the debtor to carry on his business as usual for more than two months, without either claiming or exercising any control over the property, or doing any thing to put creditors or purchasers on their guard. See also *Jordan* v. *Turner,* (3 *Blackf.* 309.) Our courts have held transactions of the same kind to be fraudulent in law against creditors. In *Divver* v. *McLaughlin,* (2 *Wend.* 596,) one Stephens mortgaged his stock of goods as a grocer to the plaintiff, and still went on with his business as usual until the property was seized on an execution in favor of the defendant, when the plaintiff brought trespass. The judge refused to nonsuit the plaintiff, and submitted the case to the jury, who found a verdict for the plaintiff. But the judgment was reversed on a writ of error, for the reason that the transaction was fraudulent in law, and should have been so ruled by the court. Chief Justice Savage, who had before gone a great length in upholding conveyances of chattels unaccompanied by possession, said there were many cases where mortgages of personal property had been considered valid, though the possession remained in the mortgagor; but he had seen no case like the present. It may, I think, be safely added, that no case can be found where such a transaction has been upheld as against creditors or purchasers. *Wood* v. *Lowry,* (17 *Wend.* 492,) is another case in point. Kellogg, a country merchant, mortgaged his goods to the plaintiffs to secure the payment of a debt, and was permitted to continue his business in the usual way until the goods were seized by an execution creditor. The plaintiffs then brought replevin; and the jury, under the direction of the judge, found a verdict for the defendant. A motion for a new trial was denied; the court saying, that no mortgage or bill of sale was ever upheld under such circumstances. It was added that, instead of leaving the matter as a question of

Griswold v. Sheldon.

fact to the jury, the judge would have been well warranted in instructing them that the transaction was fraudulent and [590] void in law.   In *Goodrich* v. *Downs*, (6 *Hill*, 438,) where the debtor made a general assignment of his property in trust for the benefit of a part only of his creditors, and reserved the surplus to himself, the judge at the circuit held the assignment fraudulent and void on its face, and nonsuited the plaintiff, instead of leaving the question of fraud to the jury; and the supreme court confirmed the decision.   That case was approved by this court in *Barney* v. *Griffin*, (2 *Comst.* 365,) where the same general doctrine was asserted.

If the plaintiff had attempted to recover the goods which Burdick had sold to his customers, no one would think for a moment that he could succeed : and the statute gives no greater or better right to a *bona fide* purchaser, than to an execution creditor. The transaction was clearly fraudulent in law as against both. There would be no hope of maintaining honesty and fair dealing, if the courts should allow a mortgagee or vendee to succeed in a claim to personal property against creditors and purchasers, after he had not only left the property in the possession of the debtor, but had allowed him to deal with, and dispose of it as his own.

But we are told that the court of errors has decided that in a case like this the question of fraud must be left to the jury, and that their finding is conclusive.   The answer to this argument is, that the court of errors never made any such decision.   That court went a great way during the " hard times " towards protecting debtors against the claims of creditors : (*see* 1 *Hill*, 457, 461 :) but it never went so far as to legalize a transaction like this.  It was held more than once that continued possession in the vendor or mortgagor was not such conclusive evidence of fraud as to preclude all explanation ; and that where the vendee or mortgagee gave evidence tending to show the transaction fair and honest, the question of fraudulent intent must be left to the jury.  But merely leaving the property in the possession or keeping of the debtor, is a very different thing from allowing him to traffic with the property and sell it as his own.   It is but

justice to the court of errors to say that it never gave the slight-
[591] est countenance to a transaction of this kind; nor did it
ever hold that such a case must be left to the decision of a jury.
   It is proper also to correct another erroneous statement in re-
lation to the decisions of the court of errors. That court held
that, although the property was left in the possession of the
debtor, yet if the vendee or mortgagee gave evidence tending to
repel the legal presumption of fraud, the question of fraudulent
intent was one of fact, which must be left to the jury. But the
court never held that the finding of the jury upon that question
was conclusive. It never attempted to subvert the ancient and
well established jurisdiction of the supreme court to grant new
trials when the jury find a verdict, either without evidence to
support it, or against evidence, or the weight of evidence. It is
often a question of fact for the jury whether the defendant made
the bond, note or promise on which the action is founded;
whether the debt has been paid or released; whether the de-
fendant took the plaintiff's goods as a trespasser, or has held the
lands in question adversely, and the like. But still the court
has an undoubted right, and is under a corresponding obligation,
to set aside the verdict when it is erroneous, and grant a new
trial. The late Mr. Justice Cowen thought the court of errors
had gone far enough to make the finding of the jury conclusive
in this class of cases.. But that error was long since corrected
by the supreme court, and its jurisdiction asserted, by setting
aside a verdict in favor of a fraudulent sale, and granting a new
trial. (*Vance* v. *Phillips*, 6 *Hill*, 433.) It is as clearly the right
and duty of the supreme court to review the finding of a jury in
cases of this kind, as it is to review their verdict on any other
question of fact: and the court is not at liberty to disclaim that
jurisdiction.
   Although we, as an appellate court, can not review the find-
ing of a jury on any question of fact, I have deemed it proper
to notice the plaintiff's argument that the verdict was conclusive
in the court of original jurisdiction, because the learned judge
who delivered the opinion of the court in that case appears to
suppose that the court of errors had so decided; whereas, from

the nature of the case, such a question could never have [592] been presented to that court for decision.

Enough has been said to show that the mortgage was fraudulent in law as against the creditors of Burdick; and the plaintiff should either have been nonsuited, or the jury should have been directed to find a verdict for the defendants.

But if there had been nothing beyond the fact of unchanged possession, and this had fallen within the class of cases where the court of errors has held that the question of fraudulent intent must be left to the jury, I should still think the judge wrong in the mode of submitting the cause to the jury. He decided that the mortgage was "not void in law on its face, and that the jury must pass upon the questions whether the mortgage was made to hinder, delay or defraud the creditors of Burdick: and if they found it was not, then whether sufficient reason or excuse had been given for permitting Burdick to have possession of the goods." This mode of leaving the cause to the jury was not in accordance with the statute, and was well calculated to produce a wrong verdict. Instead of telling the jury that the mortgage was not void in law, he should have told them that, because the possession was not changed, the mortgage was presumed in law to be fraudulent and void as against creditors and bona fide purchasers. Such is the rule of the common law, and such are the words of the statute. (2 *R. S.* 136, § 5.) And instead of telling the jury that they must pass upon the question whether the mortgage was made to defraud the creditors of Burdick—thus, in effect, leaving the onus of proving the fraud upon the creditor—he should have told the jury that the law presumed the fraud, and cast the burden of disproving it upon the person claiming under the mortgage. Such is the plain declaration of the statute. The words are—Every sale or assignment by way of mortgage, &c. of goods and chattels, unless accompanied by possession, "*shall be presumed fraudulent and void*" as against creditors and purchasers; "and shall be conclusive evidence of fraud, *unless it shall be made to appear on the part of the persons claiming under such sale or assignment,* that the same was made in good faith, and without any intent to defraud such credi- [593]

tors or purchasers." In this class of cases, as well as in all others, the jury must be properly instructed by the court. They should not be left to find that there is no fraud, because there is no direct evidence of that fact; but they should be told that fraud is presumed from the fact of unchanged possession; and that this evidence of fraud is conclusive—not such evidence as they may disregard—but in the words of the statute "conclusive evidence," unless the person claiming under the conveyance has proved that the same was made in good faith, and without any intent to defraud.

The statute does not introduce a new rule, nor does it make a forced or unnatural presumption. The direct tendency of a conveyance of goods without a change of possession is to deceive and to defraud creditors and purchasers; and the law always presumes, even in criminal matters, that a person intends whatever is the natural and probable consequence of his own actions. (1 *Phil. Ev.* 444, *Am. ed. of* 1849.) In *Rex* v. *Sheppard*, (*Russ. & Ryan's Cr. Cas.* 169,) the prisoner was indicted for uttering a forged receipt with intent to defraud one Mordey; and although Mordey swore to his belief that the prisoner had no intent to defraud him, yet as the necessary effect and consequence of the forgery was to defraud Mordey, if the prisoner could not repay the money procured by the receipt—in other words, as the natural and probable consequence of the act was to defraud Mordey—the judge told the jury that there was sufficient evidence of the intent for them to convict the prisoner: and the conviction was afterwards approved by the twelve judges.

The judge also told the jury that they must pass upon the question whether sufficient reason or excuse had been given for permitting Burdick to have possession of the goods; when, in truth, no reason or excuse whatever had either been given or offered. This was no better than telling the jury that they might guess that there was a good reason for the unchanged possession.

Although some of the points which have been noticed are not so raised by the bill of exceptions that we can act upon them by [594] way of review, there was an exception to the refusal of

the judge to nonsuit the plaintiff, and to his charge that the mortgage was not fraudulent in law : and on those grounds the judgment should be reversed.

RUGGLES, JEWETT and McCOUN, Js. concurred in the opinion that the mortgage was void on its face on the ground that it authorized the mortgagor to retain and dispose of the goods as the owner thereof, and they therefore were for reversal.

MULLETT, J. I cannot concur with the Chief Justice in holding that this instrument, as a chattel mortgage, is upon its face void in law. I admit, that if it contained a provision allowing the mortgagor to retain possession of the goods, and sell and dispose of them at his pleasure, it would not be a mortgage, or create any lien on the property, as against subsequent purchasers and perhaps creditors, (*Lowry* v. *Wood*, 17 *Wend*, 492,) but no such provision appears on the face of the paper, and if it required a resort to other evidence to prove it, the question became one of fact for the jury to decide.

But the principal ground on which the alledged invalidity of this mortgage is founded, is that it contains a stipulation which, in effect, permitted the mortgagor to retain possession of the mortgaged property until default should be made in some one of the payments secured by it. The question presented by this proposition has produced much forensic discussion and some diversity of judicial opinion, in this state, but it is generally considered satisfactorily settled by the court of last resort, in the case of *Smith and Hoe* v. *Acker*, (23 *Wend*. 658,) though the counsel who tried this cause for the defendants seems disposed to revive the controversy. The arguments on both sides of this question have long since been exhausted, and it is quite apparent that they can never be reconciled, for they originate in different principles and designedly tend to different conclusions. On one side it is attempted to make the *possession* of personal property *absolute* evidence of ownership, and all conveyances attempting to create a title inconsistent with that possession, *absolutely* void, as against creditors and purchasers. While [955]

on the other side such possession is regarded only as presumptive evidence of ownership, and such conveyances *prima facie* fraudulent. The principle attempted to be maintained by those who hold to the first proposition, was adopted by Buller, J. in the case of *Edwards* v. *Harbur*, (2 *T. R.* 594,) and is fully acknowledged by a remark of Lord Kenyon, in the case of *Gordon* v. *The East India Co.*, (7 *T. R.* 234,) in which his lordship says, " I lament that it ever was decided that the possession and apparent ownership of personal property may be in one person, and the title in another, for I think it would have been better for the public, if the possession of such property (except in the case of factors) were to carry the title with it." The absurdity of such a rule, when applied to the social and business relations of civilized life, is well illustrated by Senator Dickinson in the case of *Stoddard* v. *Butler*, (20 *Wend.* 544,) and by Hopkins and Verplank, senators, in the case of *Smith & Hoe* v. *Acker*, and in the last case it was distinctly repudiated and the principles of the common law as improved by the statute, clearly defined, and triumphantly sustained.) The case of *Smith & Hoe* v. *Acker*, adopts the principles maintained by those who hold that the possession, by a vendor or mortgagor of personal property, after such sale or mortgage, is only presumptive evidence that the sale or mortgage was made to defraud creditors and must be considered the law of the land. A bare reference to the decision of the court, in the case of *Smith & Hoe* v. *Acker*, would sufficiently show the grounds upon which I put my non-concurrence in this case; but as there still appears to be some misunderstanding in reference to the principles decided in that case and their consequences, I have concluded to state the simple propositions on which I found my opinion, without attempting to illustrate them by arguments already sufficiently repeated.

By the common law, personal property is the first and appropriate fund for the payment of debts. And all conveyances of such property, made by a debtor, for the purpose of defrauding his creditors, or preventing the application of his property to the payment of his debts, were void as against such creditors. They [596] were considered as no conveyances as against them, but a

Griswold *v.* Sheldon.

mere trick or contrivance to keep the property out of their reach. But as those who alledged the fraudulent purpose of the conveyance were bound to prove it, and as direct proof could seldom be obtained, the party seeking to establish the fraudulent design or purpose of the conveyance, was obliged to resort to circumstantial evidence or the proof of facts or circumstances indicating that the conveyance was not real, but a mere sham, made to defeat creditors, among the strongest and most prominent of which was the continued possession and use of the property by the vendor after the pretended conveyance ; not that such possession was fraudulent in itself, but was a sign or indication that he still owned the property which he had pretended to convey. This fact when proved and all other circumstances tending to the same conclusion, were but items of evidence to be explained by other evidence, and all submitted to the jury. In this conflict and confusion of circumstances, the truth was sometimes lost, and conveyances made to defraud creditors suffered to escape with impunity. To facilitate the *detection of the fraudulent purpose*, with which such conveyances were made, several statutes were passed, both in England and this state, which, in this state resulted in the revised statute of 1830. (2 *R. S.* 136.) All that part of the statute which makes such conveyances void, is founded on the common law and is generally considered but declaratory of that law ; but the 5th section is a statutory provision, devoted entirely to the means of proving that intention, design or purpose, which when proved, always rendered conveyances by a debtor void as against his creditors. The 5th section provides that every sale, made by a vendor of goods or chattels in his possession, or under his control, and every assignment of goods and chattels, by way of mortgage or security, or upon any condition whatever, unless the same be accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things sold, mortgaged or assigned, shall be presumed to be fraudulent and void, as against the creditors of the vendor, or the creditors of the person making such assignment, or subsequent purchasers in good faith, and shall be conclusive evidence of fraud, unless it shall be [597]

made to appear, on the part of the persons claiming under such sale or assignment, that the same was made in good faith, and without any intention to defraud such creditors or purchasers.

It appears to me strange that this section could be made the cause of so much difference of opinion as has sprung up under it. The subject of inquiry, in the class of cases to which it relates, is the intention, design or purpose with which the sale or assignment was made, and the fact attempted to be established is, that it was made with the intention of defrauding creditors, and the statute referred to makes a mere naked sale or assignment, unaccompanied by the delivery of the property and actual and continued change of possession *presumptive* evidence of that fraudulent intent, and *conclusive* evidence of such fraud, unless it shall be made to appear on the part of the person claiming under such sale or assignment, that the same (the sale or assignment) was made in good faith and without any intent to defraud such creditors or purchasers. The whole effect of the statute is to change the burden of proof and to throw it on the party claiming to sustain the suspected sale or assignment, by making the fact of unchanged possession, which before was a mere sign of fraud, strong presumptive evidence of the alleged fraud, to be rebutted *only* by proof that the sale or assignment was made in good faith and without any intention to defraud creditors or purchasers. How can the trial of this question, which involves only the intention, design or purpose with which the sale or assignment was made, be drawn off from the true issue and perverted into an inquiry about the motives, reasons or excuses for not changing the possession? There is no reason or excuse, except that the property was not in the possession or under the control of the vendor or assignor, which will prevent the fact of unchanged possession from being presumptive evidence that the sale or assignment was fraudulent. So long as that fact stands uncontradicted, it creates a statutory presumption that the *sale* or *assignment* was fraudulent; not that the possession is fraudulent in itself, but is *presumptive* evidence that the sale or assign-[598] ment was fraudulent. And the statute declares that such presumption shall become conclusive evidence of fraud, unless

rebutted by proof that the sale or assignment was made in good faith and without any intention to defraud creditors or purchasers. Thus requiring the party who claims under such a suspicious title, merely to show that it is honest, a thing much easier shown if true, than any satisfactory reasons for not changing the possession of the property, and yet one that meets the whole case, rebuts the presumption and relieves the transaction from suspicion. The proof of good motives, reasons or excuses *for not changing the possession*, does not tend to show that the sale or assignment was made in good faith and without any intention to defraud creditors or purchasers. While the proof of good faith and freedom from intention to defraud, does tend to rebut the statutory presumption, and if sufficient, after being encountered by other evidence, to establish those facts, does sustain the conveyance, although the possession has not been changed. This conclusion results not only from the nature and object of the inquiry, but from the alternative language of the statute.

How then can a chattel mortgage be void upon its face, unless it contains an admission that it was made to defraud creditors? Whether the fact of unchanged possession appear upon the face of the mortgage or otherwise, the presumption of fraud arising from that fact, may be rebutted by proof of good faith. It is true that wherever the fact of unchanged possession appears, whether on the face of the mortgage or otherwise, and there is *no* evidence to rebut the presumption of fraud arising from that fact, it is the duty of the court to enforce the statute presumption, and decide that point without submitting it to a jury. It is then a question of law. But if there is any material evidence in the case tending to show that the mortgage was made in good faith and without any intention to defraud creditors, that raises a question of fact which it is the duty of the court to submit to the jury. (2 *R. S.* 137, § 4.)

In the case under consideration it was clearly proved, not only by the instrument containing the mortgage, but by other evidence, that Burdick purchased a quantity of goods and rented a store from Griswold, and simultaneously with taking [599]

the conveyance and possession of the goods, and the possession of the store, gave the mortgage in question for the purchase money and rent. Did not these facts tend to show that the mortgage was made in good faith, and in a transaction which could not defraud pre-existing creditors. If there were no other goods included in this mortgage than those which were purchased from Griswold, and the mortgage was given simultaneously with the purchase, and only for the purchase money and the rent, I think the jury might very well come to the conclusion that the mortgage was made in good faith and without any intention to defraud creditors or purchasers. At any rate, I think the judge before whom this cause was tried did right in refusing to rule that this mortgage was void on its face, and in submitting the case to the jury, and that the supreme court at the general term, decided correctly in sustaining him on this point.

But the statute of 1833 (*p.* 402,) makes every chattel mortgage, when the possession of the mortgaged property is not delivered, absolutely void as against creditors of the mortgagor, &c. and unless the mortgage, or a true copy thereof, is filed in the proper office mentioned in the statute, (in this case the town clerk's office,) and requires that such mortgages shall be deposited in the office, to be kept there *for the inspection of all persons interested.* The object of filing the mortgage is to give notice of its existence to all persons who choose to inspect it, and when properly filed it is legal presumptive notice, binding on all persons interested. This mortgage was written in the inside of a five quire account book, partly filled with accounts and labelled " Day Book." It was incapable of being put into the pigeon holes where the other chattel mortgages were kept, and was therefore laid away in the desk under them. It appears to me that nobody would be likely to look into this old account book for a chattel mortgage, and that such a filing was not fair notice to those interested, nor sufficient to charge them with a knowledge of the mortgage, and as there was no proof of actual notice to these defendants, I feel myself bound to concur in the decision granting a new trial, for this reason.

H. GRAY, J. concurred in the opinion of MULLETT, J., both [600] upon the question of fraud and in respect to the filing of the mortgage; and he therefore also voted for reversal.

GARDINER and PAIGE, Js. concurred with MULLETT, J. upon the question of fraud, but they were of opinion that the mortgage was duly filed, and therefore they voted for affirmance.

Judgment reversed, and new trial granted.