JEROME C. DUTCHER, Respondent, *v.* JOHN. S. SWART-
WOOD, Appellant.

*Chattel mortgage—what agreement renders it invalid—as to what creditors void—
possession taken does not render it valid as to existing creditors.*

September 25th, 1875, one Gilbert executed a chattel mortgage to the plaintiff
upon all the goods then in and which he should thereafter bring into his store;
it being understood and agreed that Gilbert should remain in possession, and
sell the goods as though no mortgage had been given. The mortgage was
duly filed in the proper town clerk's office. Gilbert remained in possession
and sold goods until January 24th, 1876, when plaintiff—the whole mortgage
being then due — took possession of the goods, locked up the store and
commenced to take an inventory, preparatory to selling under his mortgage.
On the 27th and 28th of January, judgments were recovered against Gilbert,
for indebtednesses arising prior to January 24th, and the goods were levied
upon under executions issued thereon.

*Held,* that the mortgage was void as to all who were creditors of Gilbert prior
to January 24th, 1878, whether they had then recovered judgments and issued
executions or not; and that, as to them, it was not rendered valid and binding
by the act of the plaintiff in taking possession of the goods prior to the recov-
ery of the judgments and the levies thereunder. (BOARDMAN, J., dissenting.)

APPEAL from a judgment in favor of the plaintiff, entered upon
the verdict of a jury, and from an order denying a motion for a
new trial, made upon the minutes of the justice before whom the
action was tried. The action was brought against the under
sheriff of Schuyler county, to recover damages for the alleged
conversion of certain property described in a chattel mortgage
given by one Gilbert to the plaintiff. The mortgage covered all
the goods in the store, and all that Gilbert might buy or bring
therein before paying plaintiff the amount due him. The mort-
gage was duly filed in the proper town clerk's office. The sheriff
had taken the goods under certain executions issued on judgments
recovered by certain creditors of Gilbert.

*S. C. Keeler,* for the appellant.

*M. M. Mead,* for the respondent.

LEARNED, P. J.:

On the 25th of September, 1875, one Gilbert executed a chat-
tel mortgage to the plaintiff upon the goods and merchandise in

Gilbert's store to secure $1,147. By its terms, the mortgage was to cover all the goods and merchandise which Gilbert should buy or bring into his store before settling the demand. The learned justice who tried the case, charged that it was understood and agreed that Gilbert should take possession of the property, and go on and sell the same as in a retail store, notwithstanding the property was mortgaged; and that Gilbert did continue in possession of the property, and did engage in selling and retailing the goods mentioned in the mortgage.

No exception is made to this part of the charge; and, as the rest of the charge is based on this statement, it must be taken as correct, without examining the evidence. The mortgage contained the usual clause that, on non-payment of the debt, the mortgagee might take possession; and also, that he might take possession previously if he deemed himself unsafe.

One installment became payable October 18th, 1875; another January 18th, 1876. After the execution of the chattel mortgage, Gilbert purchased and put into his store goods to the amount of over $1,600, and he made sales to the amount of several hundred dollars.

On the 24th of January, 1876, the plaintiff employed a constable to foreclose this chattel mortgage, and that evening the constable went to the store and took possession. The constable took the key, locked up the store, and gave the key to the plaintiff. The next day the plaintiff went on and made an inventory, preparatory to selling under his mortgage. The plaintiff took possession as well of the goods bought by Gilbert after the execution of the mortgage, as of those in his possession when the mortgage was executed.

On the 27th and 28th days of January, 1876, four judgments were recovered against Gilbert, for indebtedness which arose prior to the 24th of January, 1876, and while Gilbert was in possession of the goods. Executions were issued on those days on the judgments respectively; and the defendant, the under-sheriff, on those days, levied upon the goods which the plaintiff had thus taken into his possession.

The defendant claimed on the trial, that as Gilbert was left in possession of the goods, and continued to sell them under an

agreement to that effect with the mortgagee; and as the mortgage was to have effect on subsequently acquired goods, the mortgage was void as to the creditors represented by the defendant. But the court refused so to hold, and stated that if the act of Dutcher in taking possession of the stock on January 24th, was in good faith, he was entitled to recover; but if that possession was taken fraudulently, the defendant was entitled to a verdict. To this the defendant excepted.

Subsequently the learned justice charged the jury, that the mortgage was void as to creditors, and "the sheriff could sell, in case he had made a levy during the time the property was in that condition." And he further charged, that "the case simply presents the question, whether Gilbert or the plaintiff was the owner of those goods; and the question turns upon this simple point: Did the plaintiff act in good faith when he took possession of those goods by virtue of his mortgage, or did he do it for the purpose of cheating or defrauding the creditors of Gilbert?"

To this the defendant excepted. The mortgagor remained in possession, and therefore the mortgage was presumed fraudulent as against creditors (2 R. S. [m. p.], 136, § 5); and as there was an agreement between the parties, that the mortgagor should remain in possession, sell the property and appropriate the proceeds, the mortgage was held, by the learned justice, to be void as to the creditors of the mortgagor. (*Edgell* v. *Hart*, 9 N. Y., 213; *Russell* v. *Winne*, 37 id., 595; *Mittnacht* v. *Kelly*, 5 Abb. [N. S.], 442; *Griswold* v. *Sheldon*, 4 N. Y., 580.)

But the learned justice held (and this view appears more distinctly in his subsequent opinion) that the mortgage was void only as to such creditors as should make a levy on the property before the mortgagee had taken possession. The statute (2 R. S., m. p. 136, § 6) defines who are meant by the word, "creditors." They are all persons who shall be creditors of the vendor or assignor, at any time while such goods shall remain in his possession or under his control. The statute does not say that they must be judgment-creditors, but it declares the mortgage void (presumptively or conclusively) as to all who are creditors. And this word "creditors," in a similar statute (2 R. S., m. p. 136, § 9), has received this construction. (*Thompson* v. *Van Vechten*, 27 N. Y., 581.)

It is, then, plain that the mortgage was (presumptively or conclusively) fraudulent as to the creditors represented by the defendant up to the 24th of January, 1876, when the plaintiff took possession. It is claimed by the plaintiff, and was so held by the learned justice, that the plaintiff, by taking possession under his mortgage on that day (unless he acted with actual intent to defraud), made the mortgage valid as to then existing creditors of the mortgagor who had not levied on the property.

The object of the statute, and of all similar law, is to prevent an obvious evil. Men who are in the actual possession and enjoyment of personal property necessarily obtain a credit thereon. They appear to be the owners, and are trusted accordingly. When, therefore, they have given a mortgage thereon, they obtain a credit to which they are not entitled. Now, if the doctrine of the learned justice is correct, the statute fails entirely to correct this evil. If the mortgagee, remaining out of possession, can allow the mortgagor to obtain credit and contract debts, and then, before the creditors sue, if he can take possession and thus defeat their claims, the statute becomes useless. The fraudulent nature of such mortgages consists in giving the mortgagor credit by allowing him to remain in possession. If the mortgagee, by taking possession, can defeat creditors who have already trusted the mortgagor, the arrangement becomes a trap, which the mortgagee may spring at any time.

In *Frost* v. *Warren* (42 N. Y., 204), a chattel mortgage was given; subsequently the plaintiff, the mortgagee, took possession, and a day or two afterwards the defendant, the sheriff, levied under attachment against the mortgagor. Two opinions were delivered, principally on the question of the validity or invalidity of the mortgage. Neither suggests the idea that the possession taken by the plaintiff prevented a levy afterwards. Yet if that doctrine be correct, it would have disposed of the case in favor of the plaintiff.

The case of *McCaffrey* v. *Woodin* (65 N. Y., 459) does not touch the question of creditors. It was a controversy between parties to the instrument.

In *Parshall* v. *Eggert* (54 N. Y., 18), the court distinctly state that, in the case of a chattel mortgage, the time when the creditor

became such fixed the rights of the parties; that a mortgage not then filed was void as to him, though he should not then be in a position at once to attack its validity; and they say that a chattel mortgage unfiled could not afterwards be filed, with effect to cut off the right of an intermediate creditor. As remarked above, the language of the statute as to the filing of chattel mortgages is the same with that as to delivering of possession under such mortgages.

If there had been no mortgage to the plaintiff, and if, on the 24th of January, Gilbert had turned out to the plaintiff and delivered to him goods in payment of a just debt, there is no reason to say that the plaintiff would not have obtained a good title to the same as against the defendant. Perhaps the same would be true if on that day Gilbert had delivered goods to the plaintiff in payment of a debt secured by chattel mortgage. But nothing of that kind was done. The plaintiff was only mortgagee in possession after the 24th of January, as he had been mortgagee out of possession before. No new transfer was made by Gilbert. The plaintiff took possession by no other title or authority than his mortgage. And the statute requires that the mortgage be accompanied by an *immediate* delivery — not that it be followed by a subsequent delivery. The statute does not say that the mortgage shall be presumed fraudulent until delivery of possession.

If, then, the mortgage was fraudulent as to the creditors represented by the defendant when their debts were contracted, the plaintiff cannot, under that mortgage, make to himself a title as against those creditors.

Some reliance is placed by the defendant on the case of *Powell* v. *Preston* (8 N. Y. S. C. [1 Hun], 513); but there are two respects in which that case differs from the present. That was the case of a conditional sale. The plaintiff in that case, who re-took the goods, was the original owner, and had never made an absolute sale of them. The son, who had been in possession, had never been the owner, except conditionally. The son had not mortgaged the goods to the plaintiff. Again, the jury found that there was no fraud or bad faith in the plaintiff's title.

Now, in the present case, the court held, as a matter of law, that the mortgage, under which the present plaintiff claimed, was

fraudulent as to creditors of Gilbert; but, he practically held, that it was relieved from the fraud by plaintiff's taking possession in good faith.

If the court had held, or if the jury had found, in the present case, that the mortgage was, in fact, made in good faith and without intent to defraud, that would have established the plaintiff's rights. The difficulty is that the contrary was held by the court; and that this must be taken as the law of the case, because the jury might have so found, if the question had been submitted to them. Assuming, then, that the mortgage was fraudulent as to creditors, we do not understand that *Powell* v. *Preston* holds that the taking of possession under a fraudulent mortgage, gave the mortgagee a good title, even though the act of taking possession was done in good faith. For the court held that, owing to agreements in, and connected with the mortgage, it was fraudulent. The plaintiff was a party to these agreements; he was, therefore, chargeable with knowledge of the fraud. He cannot, then, obtain a good title under that mortgage, as a person acting in good faith; and we have already seen that he has no title, except under the mortgage.

The judgment and order should be reversed and a new trial granted, costs to abide the event.

TAPPAN, J:

Plaintiff took possession upon the mortgage, and not by virtue of any other or different authority from, or agreement with Gilbert.

I concur in the foregoing opinion of Justice LEARNED.

BOARDMAN, J., (dissenting):

Assuming (as perhaps we must in this case) that the plaintiff's mortgage was fraudulent in law as to creditors, it was still possible for him to take possession of the mortgaged property, with the consent of the mortgagor, as a security for his debt; and such possession so taken would be valid and effectual as against creditors at large. This was precisely what was attempted. The learned judge submitted that question of fact to the jury, and the jury has found that such possession was taken by the plaintiff of this property, without fraud or fraudulent intent, before the cred-

itors had obtained their judgments. The plaintiff, then, as a creditor of defendant, had taken possession of certain property of defendant's, in good faith, as a pledge or security for his debt; and the invalidity of the mortgage he before that, and then, held, would not destroy the effect of this new act, which the law permits. An unfiled mortgage is void as to the subsequent creditors at large of the mortgagor; but it clearly cannot impair a title obtained from the mortgagor, which overcomes the defect of the neglect to file the mortgage.

If the plaintiff had had no mortgage, good or bad, he could have taken possession of the property, either as a pledge for or in payment of his debt. Possession, so taken, would give him the preference over general creditors. It cannot be possible that the possession of a worthless security puts the plaintiff in a worse position than if he had none.

Entertaining these views, I think the case was properly disposed of at the Circuit, and that the judgment and order should be affirmed, with costs.

Judgment and order reversed; new trial granted, costs to abide event.