---

### *In re* KEELER'S WILL.

(*Surrogate's Court, Cayuga County.* September 25, 1889.)

1. COSTS—JURISDICTION TO AWARD—PROBATE OF WILL—CONSENT OF PARTIES.
   Since Code Civil Proc. N. Y. § 2558, provides that costs shall not be allowed out of the estate to an unsuccessful contestant of a will, a stipulation by the parties that costs shall be so awarded will not be enforced, as the court is without jurisdiction to so decree, and consent of parties cannot confer jurisdiction.

2. SAME—STIPULATION.
   Correspondence between counsel as to the manner in which costs shall be decreed, containing propositions not accepted, will not, though the propositions are afterwards orally agreed to, constitute a valid stipulation "in writing," as required by rule of court.

3. SAME.
   When a contest is apparently made in good faith, and on substantial grounds, and, owing to a misunderstanding of counsel as to a stipulation for a compromise, the contestants do not appear at the trial, and a verdict is rendered against them without opposition, the court will, in the exercise of the discretion conferred in such cases by Code Civil Proc. N. Y § 2558, direct the proponent's costs to paid out of the estate, and not by the contestants personally.

This controversy grows out of the probate of the will of Morris Keeler, deceased; it being contested by his heirs. Probate was refused, and the proponent appealed to the supreme court, where judgment was reversed. 3 N. Y. Supp. 629. On a new trial being had, the will was admitted to probate, and only the question of costs is now presented.

*W. D. Shuart* and *Frank S. Curtis*, for proponent. *S. Edwin Day*, for contestants. *W. E. Hughitt*, special guardian, for infant.

TELLER, S. This is an application for costs by the proponent of the will of the decedent, asking that costs be allowed as against the contestants personally. The contestants also ask an allowance of costs from the testator's

estate; claiming the right thereto by virtue of an alleged stipulation of counsel. The proceedings for probate of the will resulted in a decree of this court denying probate, and awarding costs to both parties from the estate. An appeal was taken to the general term of the supreme court, where the decision of this court was reversed, and a trial upon questions of fact before a jury ordered. Upon the second trial, no opposition was made to probate, and a verdict was rendered in favor of the proponent upon all the issues submitted. After the decision upon appeal, and prior to the second trial, correspondence was had between William E. Hughitt, Esq.,—who had appeared in the proceeding as special guardian for one of the contestants, (a minor,) and for no other party to the proceeding, as he states in his affidavit now presented,— and William D. Shuart, Esq., counsel for proponent, in regard to a settlement of the litigation. There had been an interview between these parties relating to this subject, and on April 11, 1889, the special guardian wrote Mr. Shuart as follows: "Dear Judge: I saw Judge Day, Tuesday, and further conferred with him about the matter of my talk with you at your office. We suggest as follows: We to be allowed our costs as per judgment of surrogate's court of Dec. 27th, 1887; in like manner, our costs and disbursements since; in addition, that there be paid our side, say $3,000. It seemed to us that you would think this much better than to litigate further," etc. April 15th, Mr. Shuart replied: "I feel that I could not advise my client to accept your proposition. Of course, the costs of the special guardian will be allowed all through the proceedings, whatever may be the result, but not quite so with regard to the other costs. Yet I feel that, if the litigation could be terminated without the labor of a protracted and hard-fought trial, it would be to the advantage of our client to pay all of the contestants' costs, that allowed by the surrogate's court, and referred to by you, and all other costs; and we should make no opposition to the old bill of Judge Day to which you refer. * * * We think, if the contestants' costs are allowed, and the bill of Judge Day, that they ought to claim nothing further of the old lady." A letter of explanation was written in reply on the 17th of April, to which proponent's counsel on the 18th of April answered: "We do not see how we can vary our proposition sent the other day." On April 20, 1889, the special guardian wrote: "You have left me in a hole. I thought I was warranted, from our personal interview, in reporting to clients that you would advise the payment of something. 'Judge Day's old bill' was only mentioned in my letter so that it might not appear to be confounded. He does not regard its payment as any concession. * * * I cannot think taxable costs only were in your mind at our interview. I certainly did not so think. I hope you will let me out by offering something beside taxable costs." April 23d, Mr. Shuart replied: "I did have in mind the propriety of paying your people something besides taxable costs when we had our interview. * * * I will talk the matter over with my client, and ascertain just what her feelings are in the matter. Do not let this prevent you from making such arrangements as you may deem necessary for the trial of the action at the next circuit; although I shall be quite pleased if, after a conference with my client, we find some way to help you out." On April 29th, he again wrote: "I was at Moravia last Friday, and had an interview with my client, the result of which is to leave no other way than for us to try the case, unless you are willing to accept the proposition contained in our letter of April 15th." On the 4th of May, the special guardian wrote, in reply: "I have little doubt but that your offer will be accepted. * * * Assume that the best way will be to await your arrival on Monday, or later, if you desire. Under all the circumstances, we expect you will allow the costs at a liberal rate."

The foregoing are all the contents of the letters between these parties which it is deemed material to quote. Upon the following Monday, the first day of the Cayuga circuit, the parties to the correspondence met at Auburn, and had

an interview, as to the details of which there is now a dispute. Mr. Hughitt presents his affidavit, in which he says he was then told by Mr. Shuart that some of the Keelers would not consent to said settlement, and he replied the arrangement must be carried out, that Judge Day so understood it, and he had authority from him for it; that Mr. Shuart, after some further conversation, said proponent would do as he had proposed, if there would be no contest before the jury; that he (deponent) assented, and that said arrangement was fully carried out on contestants' part, relying on said promises of said Shuart. Mr. Shuart presents his affidavit, in which he states that he did not say to said Hughitt that the proponent would do as he proposed, if there should be no contest before the jury; that he did say that William E. Keeler, one of the contestants, declined to accept the proposition which had been made by him, and that therefore there could be no settlement as proposed; that he had been definitely informed by said Keeler that the other contestants declined to make any compromise or settlement, unless proponent would pay them, in addition to their costs, the sum of $200; that such proposition was rejected by him, and no agreement to compromise or settle was consummated; and that he did not understand Judge Hughitt as accepting any proposition of settlement. He also says, in his affidavit, that, just before coming into court, he had been told by William E. Keeler that there could be no settlement, unless $200 was paid in addition to all costs, and that he (Keeler) had received instructions from Judge Day to have the matter appealed, and to have the papers prepared by William E. Hughitt, and that the papers would be served upon proponent's attorney before the case could be tried. Judge S. Edwin Day was attorney of record, and represented all the contestants, except the one for whom Judge Hughitt appeared as special guardian. He took no part in the correspondence, so far as is shown, and did not appear upon the second trial, (at the circuit.) His affidavit is read, in which he states that he relied on the arrangement stated in the affidavit and letters, (except that of May 3d,) and that, in consequence, he did not appear at the May Cayuga circuit; and none of the contestants, so far as he knows, then appeared. Since the trial, each party has served a bill of costs upon the attorney for the other party, and the question of allowance is presented upon the cross-applications.

I do not think there has been shown to be such a stipulation as would authorize this court to allow costs to the unsuccessful contestants. Prior to the letter of May 3d, above referred to, there certainly was no agreement between the parties. The contestants asked, as a condition of withdrawing their objections, an allowance of money, in addition to taxable costs. The letter of Mr. Hughitt of May 3d does not contain a positive acceptance of the offer of proponent's counsel, but merely a statement that he had "little doubt but that your offer will be accepted." Certainly, the minds of the parties had not met prior to the interview at the court-house the day of the trial. I am convinced that, before any agreement was made, the counsel for the proponent was told by one of the contestants that the proposed settlement would not be accepted; and that the counsel notified Judge Hughitt that, in consequence of this contestant's declining to accept the proposition, there could be no settlement. Whether it was thereupon agreed between counsel that the proposition contained in the letter of April 15th should be carried out may not be necessary to determine, for the reason that any agreement then to be made required the assent of both parties, and to be binding should have been reduced to writing, and subscribed by the party against whom it is alleged, or by his attorney or counsel. Rule 11. I do not think a letter of an attorney, proposing terms of settlement, which are withdrawn before acceptance, can be held to be such evidence of a subsequent agreement as this rule requires. The object of the rule was to avoid the unpleasant duty of a court, in weighing conflicting affidavits, to determine the truth of statements made by attorneys in proceedings like the present.

As to whether counsel promised that the proponent would do as he proposed, if there should be no contest before the jury, there is a flat contradiction in the affidavits. That the contestants consider it necessary to prove there was such a promise is confirmatory of the position that the assent of both parties at that time was deemed essential. Such agreement, not appearing by written evidence, cannot be held to have been binding. If the alleged agreement had been made, and properly evidenced, I do not think this court would be at liberty to enforce it, in view of the statute upon the subject of costs. Section 2558 of the Code provides that, when a decree is made upon a contested application for probate or revocation of probate of a will, costs payable out of the estate or otherwise shall not be awarded to an unsuccessful contestant of the will, unless he is a special guardian for an infant. It is a well-established principle of law that jurisdiction of the subject-matter involved in an action or legal proceeding cannot be conferred by stipulation; and, when the law-making power prescribes limits or conditions to the authority of a court, they cannot be dispensed with by litigants. *Griswold* v. *Sheldon*, 4 N. Y. 581; *McMahon* v. *Rauhr*, 47 N. Y. 67; *Davidsburgh* v. *Insurance Co.*, 90 N. Y. 526. This court has no jurisdiction of the subject-matter,—the thing in dispute; the allowance of costs to unsuccessful contestants upon the probate of a will,—and consent of the parties would not confer such authority. As to the matter of an allowance of costs to the proponent, it lies within the discretion of this court to determine whether they shall be paid out of the testator's estate, or be decreed to be paid by the contestants personally. Code, § 2558. There is not proof to vary the impression formed upon the first trial, that the contest was made in absolutely good faith, and with sufficient grounds. The imposition of the burden of the payment of costs upon the contestants, in these circumstances, simply because the will has been finally adjudged to be valid, would be contrary to precedent, and unjust. Moreover, I am satisfied that the attorney for the contestants failed to appear at the circuit, at which this case was tried, for the reason that he relied upon the arrangement, proposed by the counsel for the proponent, being carried into effect. The conclusion is also unavoidable that the proponent's counsel must have known that fact, when proceeding with the trial; and, although the proponent may not be bound by any stipulation, the facts, which are uncontroverted, are sufficient to require the court to direct the payment of the costs of the proponent out of the testator's estate. The costs of the special guardian prior to the appeal to the general term are allowed at the amount originally taxed. Subsequent costs are denied, for the reason that the ward became of full age prior to the appeal, and had no further need of a guardian.